UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YASMANY JANEIRO GONZALEZ, | CASE NO. 2:26-cv-00667-DGE |
| Petitioner, | ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) |
| v. | |
| WARDEN ICE PROCESSING CENTER, | |
| Respondent. | |

This matter comes before the Court on Petitioner Yasmany Janeiro Gonzalez's petition for writ of habeas corpus. (Dkt. No. 3.) Having reviewed the petition, the return memorandum (Dkt. No. 6), the traverse (Dkt. No. 9), a supplement to the traverse (Dkt. No. 10), and all supporting materials, the Court GRANTS Petitioner's writ of habeas corpus.

## I    BACKGROUND

### A.  Factual Background

Petitioner is a native and citizen of Cuba. (Dkt. Nos. 3 at 1; 8 at 2.) He entered the United States on an unknown date and at an unknown location "without being admitted or

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) - 1

paroled after inspection by an immigration officer."[1]  (Dkt. No. 7-1 at 3.)  On May 5, 2021, the U.S. Border Patrol ("USBP") encountered Petitioner near San Luis, Arizona and took him into custody.  (*Id.*)  On May 5, USBP issued Petitioner a Notice to Appear ("NTA"), charging him inadmissible and removable "pursuant to Sections 212(A)(6)(a)(i) of the Immigration and Nationality Act" ("INA"), which is codified at 8 U.S.C. § 1182(A)(6)(a)(i).  (*Id.*)  Petitioner was then released on an order of recognizance with instructions to report to his local Enforcement and Removal Operations ("ERO") office.  (*Id.*)

Nothing in the record details Petitioner's whereabouts or activities between May 2021 and February 2025.  On February 24, 2025, Petitioner's wife Dayana Gutierrez Camacho submitted a Petition for Alien Relative (Form I-130) with the U.S. Citizenship and Immigration Services ("USCIS"), which is apparently "pending."  (Dkt. Nos. 3-1 at 1; 3-3 at 1; 7-1 at 3.)

On May 21, 2025, Petitioner appeared in immigration court in Miami, Florida.  (Dkt. No. 8 at 2.)  Deportation Officer Freite Armando Subero Arias states that Petitioner "joined a joint motion to dismiss his NTA and withdraw all applications for relief."  (*Id.*)  Petitioner's Form I-213 notes only that on May 21, an immigration judge "granted an Order on Motion to Dismiss proceedings and withdrew any applications of relief."  (Dkt. No. 7-1 at 3.)  In his habeas petition, Petitioner explains that he "appeared for a Master Calendar hearing[,]" where the immigration judge "administratively closed his case."  (Dkt. No. 3 at 1.)

Notwithstanding the uncertain circumstances surrounding the motion to dismiss Petitioner's immigration proceedings and Petitioner's position on it, Petitioner was taken into custody pursuant to INA § 235(b)(1) and placed into expedited removal proceedings under INA § 212(a)(7)(A)(i)(I) "immediately upon exiting the courtroom."  (Dkt. Nos. 3 at 1; 8 at 2.)

---

[1] Petitioner himself states he entered the United States in 2021.  (Dkt. No. 3 at 1.)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) - 2

Around May 23, 2025, Petitioner expressed fear of returning to Cuba, so ERO submitted a referral to a USCIS asylum officer for a credible fear interview.  (Dkt. No. 8 at 2.)  On May 26, Petitioner was transferred to the Northwest Immigration and Customs Enforcement ("ICE") Processing Center ("NWIPC") in Tacoma, Washington.  (*Id.*)  Officer Arias declares that on May 30, an asylum officer found Petitioner did not have a credible fear of return to Cuba.  (*Id.*)  On July 3, 2025, an immigration judge in Tacoma conducted a review of the "negative credible fear determination" and found that Petitioner had not established a "*significant possibility* of eligibility for asylum[.]"  (Dkt. No. 7-2 at 2–3.)  The judge affirmed the May 30 credible fear determination, and the case was returned to the Department of Homeland Security ("DHS") for removal of Petitioner.  (*Id.* at 3.)  On July 17, DHS issued Petitioner an order of expedited removal under INA § 235(b)(1),[2] charging him inadmissible under INA § 212(a)(7)(A)(i)(I).  (Dkt. No. 7-3 at 2.)

Officer Arias declares that on August 12, 2025, ERO received notice that the Cuban government would not issue a travel document to Petitioner.  (Dkt. No. 8 at 3.)  Then, on November 11, 2025, ERO served Petitioner with documents informing him that he was "scheduled to be removed to Mexico."  (*Id.*)  Petitioner was transferred to an ERO facility in El Paso, Texas; on November 19, he refused to board a bus to Mexico.  (*Id.*)  On February 12, 2026, Petitioner was transferred back to the NWIPC.  (*Id.*)  Respondents were notified the Cuban government would not issue Petitioner travel documents a second time on March 10.  (*Id.*)  On March 25, ERO served Petitioner with an I-229A form, a "Warning for Failure to Depart."  (*Id.*)  That same day, ERO served Petitioner with a notice that "there would be a custody review of his

[2] Codified at 8 U.S.C. § 1225.

detention on or about April 25, 2026." (*Id.*)  Officer Arias declares that ERO will continue to attempt to remove Petitioner to a third country in the "near future[.]" (*Id.*)

**B. Procedural History**

On February 24, 2026, Petitioner filed an application to proceed *in forma pauperis* ("IFP") along with his proposed habeas petition.  (Dkt. No. 1.)  Petitioner filed the incorrect type of IFP form for his habeas case; the Clerk of Court notified him on February 25 (Dkt. No. 2), and Petitioner subsequently paid the $5.00 filing fee.  His petition for writ of habeas corpus was entered on the docket on March 13, 2026 (Dkt. No. 3), and the Court issued its standard scheduling order (Dkt. No. 4).  Respondents filed their response on March 27, 2026 (Dkt. No. 6) and Petitioner filed his traverse on April 2 (Dkt. No. 9).[3]

Petitioner argues he has remained continuously detained since May 21, 2025, and has been transferred between facilities in various states.  (Dkt. No. 3 at 1.)  Petitioner contends his detention is unlawful pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001) because it has extended beyond the six-month presumptively reasonable period and because there is no significant likelihood of his removal, since Cuba has not accepted Petitioner, nor has it issued travel documents.  (*Id.* at 2; *see also* Dkt. No. 9.)  Petitioner further argues he has no criminal history, is not a flight risk, has complied with immigration proceedings and appeared voluntarily, and is married to a United States citizen and has a pending Form I-130 application.  (Dkt. No. 3 at 2.)  In his traverse, Petitioner reiterates "there is no evidence Mexico has agreed to accept

---

[3] Petitioner's traverse was filed one day late.  (*See* Dkt. No. 4) (scheduling order).  The Court will consider Petitioner's traverse, because Petitioner is currently in detention and must therefore submit filings by mail.  *See Fed. Trade Comm'n v. Lunada Biomedical, Inc.*, Case No. CV-15-3380-MWF (PLA), 2015 WL 12911516, at *1 (C.D. Cal. Sept. 15, 2015) (permitting untimely replies when "warranted in the interests of justice").

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) - 4

him." (Dkt. No. 9 at 2.)  Petitioner's supplement to his traverse includes the same argument. (*See* Dkt. No. 10 at 2.)

Respondents argue Petitioner is subject to expedited removal pursuant to INA § 235(b), which is codified at 8 U.S.C. § 1225(b), and that such provision "cannot 'reasonably be read to limit detention to six months.'"  (Dkt. No. 6 at 5) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 301 (2018)).  Respondents contend that if the Court thinks it prudent to do a Due Process analysis of the reasonableness of Petitioner's continued detention, it should use the factors laid out in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) and should still find in the Government's favor.  (*Id.* at 7–8.)

The Court held a hearing on April 14, 2026.  This matter is now ripe for disposition.

## II    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States."  *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, Case No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).  Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'"  *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

### III    DISCUSSION

**A.  Petitioner is Detained Subject to 8 U.S.C. § 1231**

Noncitizens deemed to be "inadmissible" are considered "removable." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107–108 (2020).  These noncitizens are either processed through expedited or regular removal proceedings.  *Innovation L. Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019).

8 U.S.C. § 1225 outlines the procedures for expedited removal proceedings and "specifies the class of noncitizens who are eligible for expedited removal."  *Garcha v. Dep't of Homeland Sec.*, Case No. 25-cv-07215-TSH, 2026 WL 747457, at *5 (N.D. Cal. Mar. 17, 2026) (citing *McAleenan*, 924 F.3d at 507 (internal citation omitted)).  A noncitizen is subject to expedited removal only if the immigration officer determines the noncitizen is inadmissible on one of two grounds: (1) fraud or misrepresentation under 8 U.S.C. § 1182(a)(6)(C) or (2) a lack of documentation under 8 U.S.C. § 1182(a)(7).  *McAleenan*, 924 F.3d at 507; § 1225(b)(1)(A)(i).  In such instance, a noncitizen can be ordered removed immediately unless the noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution."  § 1225(b)(1)(A)(i).  If this occurs, an asylum officer will conduct a credible fear interview of the noncitizen.  § 1225(b)(1)(A)–(B).  If the asylum officer finds the noncitizen fails to establish a credible fear of persecution, the noncitizen may "request for prompt review by an immigration judge" of the asylum officer's determination.  § 1225(b)(1)(B)(iii)(III).  And if the immigration judge affirms the asylum officer's finding, the immigration judge's decision "is not subject to administrative appeal," thereby making an expedited removal order a final order of removal.  § 1225(b)(1)(C).

In this case, an asylum officer found Petitioner did not have a credible fear of return to Cuba.  (Dkt. No. 8 at 2.)  An immigration judge reviewed and affirmed this determination on July 3, 2025.  (Dkt. No. 7-2.)  An expedited removal order, not subject to further administrative appeal, was then entered on July 17, 2025.  (Dkt. No. 7-3.)  Accordingly, Petitioner has been subject to final order of removal since July 17, 2025.  Respondents confirmed during the hearing that Petitioner's expedited order of removal is a final order of removal.

A noncitizen's removal after they are ordered removed is governed by INA § 241, codified at 8 U.S.C. § 1231.  The first 90-day period following the entry of the order of final removal is called the "removal period."  *Id.* § 1231(a)(1)(A).  The removal period begins, relevant here, on "[t]he date the order of removal becomes administratively final[,]" *id.* § 1231(a)(1)(B), which in this case was July 17, 2025.  (*See* Dkt. No. 7-3.)

Petitioner challenges his prolonged detention under *Zadvydas* (Dkt. No. 3 at 2), which applies when an individual is subject to a final order of removal.  *Zadvydas*, 533 U.S. 678 at 697.  Despite acknowledging the finality of the July 17, 2025 expedited removal order, Respondents argue Petitioner remains detained pursuant to § 1225(b).  (Dkt. No. 6 at 5–7.)  Specifically, as argued at the hearing, Respondents assert Petitioner's detention is based on § 1225(b)(1)(B)(iii)(IV), which in their view makes detention mandatory and not subject to the Due Process limitations imposed by *Zadvydas*.  (*See also* Dkt. No. 6 at 5–6.)  Respondents, however, offer no authority to support the conclusion that § 1225(b)(1)(B)(iii)(IV) limits *Zadvydas*'s holding, and the Court otherwise rejects such conclusion.

**B.  Petitioner's Detention Violates the Fifth Amendment Due Process Clause**

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S.

CONST. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). Thus, the Supreme Court has held "the Due Process Clause protects a[ ] [noncitizen] subject to a final order of deportation[.]" *Zadvydas*, 533 U.S. at 693–694 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238, (1896)).

Though detention is mandatory during the removal period, continued detention is discretionary after the 90-day period passes. *Id.* § 1231(a)(2). In *Zadvydas*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. at 699. As the Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* The *Zadvydas* court concluded, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

*Zadvydas* "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003) (quoting *Zadvydas*, 533 U.S. at 701). If the noncitizen meets this burden, then the respondents must "introduce evidence to refute that assertion." *Id.* (first citing *Zadvydas*, 533 U.S. at 701; and then citing *Xi v. I.N.S.*, 298 F.3d 832, 839–840 (9th Cir. 2002)); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's]

detention, the unforeseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law, as construed by the Supreme Court.").

        1.   Petitioner has met his burden under *Zadvydas*.

Petitioner provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. First, Petitioner has already been detained for more than six months. Since his order of removal became final, Petitioner has been detained approximately nine months (Dkt. Nos. 3 at 2; 7-3 at 2), making his detention presumptively unreasonable under *Zadvydas*, 533 U.S. at 701. Respondents also acknowledge Petitioner has been detained since May 21, 2025. (Dkt. No. 8 at 2.)

Second, Petitioner has shown his removal is not reasonably foreseeable. Respondents have failed to deport Petitioner for close to nine months (and counting), since Petitioner was ordered removed on July 17, 2025. (Dkt. No. 7-3 at 2.) Indeed, Officer Arias affirmed in his declaration that the Cuban government has twice denied travel documents for Petitioner, the first time as early as August 12, 2025. (Dkt. No. 8 at 3.) Respondents apparently served Petitioner with third-country removal documents to Mexico in November 2025, but as discussed in more detail below, it was unlikely Mexico would have accepted Petitioner. Thus, the Court finds Petitioner has met his burden, offering sufficient evidence to show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) - 9

      2.  <u>Respondents have failed to rebut Petitioner's showing.</u>

The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Id.*  Respondents fail to adequately address Petitioner's claim that his detention is presumptively unreasonable.

Respondents' primary argument, that Petitioner is not permitted to challenge his detention under *Zadvydas* because he is detained pursuant to § 1225(b)(1), has already been considered and rejected.  *See* Section III(A) *supra*.  Respondents do not contest (and in fact, acknowledge) that Petitioner cannot be removed to Cuba.  (Dkt. No. 8 at 3.)  Their remaining factual assertion—that ERO will "continue attempts to remove Petitioner to a third country in the near future"—is deficient.  (*See generally* Dkt. No. 8.)  But this single, vague statement is not enough to overcome the presumption of unreasonableness.  *See Elshourbagy v. Bondi*, --- F. Supp. 3d ----, Case No. 2:25-cv-02432-TL, 2025 WL 3718993, at *4 (W.D. Wash. Dec. 23, 2025) (finding the Government did not show it was likely a petitioner would be removed to Uganda, a third country, when it provided no evidence it had taken steps to obtain a Ugandan travel document, that Uganda had any interest in accepting the petitioner, or even if there was any official communication with Uganda regarding the petitioner at all).  In fact, Respondents provide no evidence Petitioner will be removed anytime soon to any country.

Because there is not a significant likelihood of removal in the reasonably foreseeable future, Petitioner's detention is no longer permitted under *Zadvydas*.  *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").  Petitioner's detention is unlawful, and his release is appropriate.  *See Hoac v. Becerra*, Case No. 2:25-CV-01740-DC-JDP, 2025 WL

1993771, at *7 (E.D. Cal. July 16, 2025) (allowing release upon a finding that removal was not reasonably foreseeable).

### C. Third-Country Removal

Petitioner does not formally bring a Due Process challenge regarding third-country removal. (Dkt. No. 3.) But Petitioner and Respondents both identify Petitioner objects to being removed to Mexico. (Dkt. Nos. 8 at 3; 9 at 1.) And counsel for Respondents acknowledged at the hearing that he was unaware if Mexico had ever issued travel documents for Petitioner, and further, that he was unaware of a case in which Mexico accepted non-Mexican citizens that did not consent to being removed to Mexico. Respondents also could not identify the statutory authority or agency policy allowing for third-country removal in cases involving an expedited removal order. Moreover, the operative DHS memoranda on third-country removals identify third-country removal policies do not apply to expedited removal orders.[4]

Despite the Court's concerns with Respondents' stated intent to continue pursuing third-country removal in this case, Petitioner's petition does not raise Due Process claims related to potential third-country removal. The Court therefore will not offer any rulings regarding third-country removal in this case. Notwithstanding, the Court cautions Respondents to carefully review the basis upon which they claim the ability to pursue third-country removal.

_____

[4] *See* Sec'y Kristi Noem, *Guidance Regarding Third Country Removals*, DEP'T OF HOMELAND SEC., March 30, 2025, https://immigrationlitigation.org/wp-content/ uploads/2025/04/43-1-Exh-A-Guidance.pdf; ICE Dir. Todd Lyons, *Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D. V.D., No. 24A1153 (U.S. June 23, 2025)*, DEP'T OF HOMELAND SEC., July 9, 2025, https://storage.courtlistener.com/recap/gov.uscourts.mad.282404/gov.uscourts.mad.282404.190.1.pdf.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) - 11

IV    CONCLUSION

For the aforementioned reasons, Petitioner's petition for writ of habeas corpus (Dkt. No. 3) is GRANTED.  The Court ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them shall immediately release Petitioner from custody under appropriate conditions of supervision issued under 8 C.F.R. § 241.13.

2. Within **TWENTY-FOUR (24) hours** of this order, Respondents must provide the Court with a declaration confirming Petitioner has been released from custody.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 15th day of April 2026.

David G. Estudillo
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) - 12